**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Nick Barthel, Esq. (SBN: 319105)
nicholas@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**KAZEROUNI LAW GROUP, APC**
Yana Hart, Esq. (SBN: 306499)
yana@kazlg.com
David James Mcglothlin (SBN: 253265)
david@kazlg.com
2221 Camino Del Rio S, Ste 101
San Diego, CA

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CRISTIAN ROSAS; RALPH MILAN; and TANNER AYOOB, Individually and On Behalf of All Others Similarly Situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**HI-TECH PHARMACEUTICALS, INC., d/b/a APS NUTRITION,**<br><br>Defendant. | **Case No.:** 8:20-cv-00433<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>1) **CONSUMER LEGAL REMEDIES ACT, CAL. CIVIL CODE §§ 1750, *ET SEQ.*;**<br>2) **FALSE ADVERTISING LAW, CAL. BUS. & PROF. §§ 17500, *ET SEQ.*;**<br>3) **UNFAIR COMPETITION LAW, CAL. BUS. & PROF. §§ 17200, *ET SEQ.*;**<br>4) **NEGLIGENT MISREPRESENTATION; AND**<br>5) **INTENTIONAL MISREPRESENTATION.**<br><br>**[JURY TRIAL DEMANDED]** |

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

## INTRODUCTION

1.  Plaintiffs Cristian Rosas ("Plaintiff Rosas"), Ralph Milan ("Plaintiff Milan"), and Tanner Ayoob ("Plaintiff Ayoob") (collectively the "Plaintiffs") bring this Class Action Complaint to challenge the deceptive advertising and business practices of defendant, Hi-Tech Pharmaceuticals, Inc., d/b/a APS Nutrition ("HTP" or "Defendant") with regard to Defendant's false and misleading promotion of its purportedly consumable "dietary supplement" products. Based on such false and misleading advertisements, Plaintiff and others similarly situated purchased Defendant's mislabeled products.

2.  Plaintiffs collectively purchased a variety of Defendant's products, which Defendant advertised as being a "dietary supplement" that is safe for human consumption. Plaintiffs purchased "Mesomorph Pre-Workout"; "DMAA Enhanced—Off the Chain Aminos"; "HydroxyElite"; and "Lipodrene: With 25mg Ephedara Extract" (collectively, "Products").

3.  However, each of the Products contained either DMAA, DMHA or Methylsynephrine, which the Food and Drug Administration's ("FDA") considers dangerous ingredients not safe or approved for human consumption.

4.  Consequently, Defendant does not comply with federal and parallel state regulations. Defendant misleads consumers into believing its products are "Supplements" and safe for human consumption when that is not true. These misrepresentations allow Defendant to increase its sales and capture market shares from its competitors.

5.  Plaintiffs makes these allegations as follows upon personal knowledge as to Plaintiffs' own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiffs' attorneys.

6.   Defendant's nationwide sale and advertising of deceptively misbranded products constitutes violations of: (1) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (2) California's False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.*; (3) California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*; (4) negligent misrepresentation; and (5) intentional misrepresentation.

7.   This conduct caused Plaintiffs and others similarly situated damages, and requires restitution and injunctive relief to remedy and prevent further harm.

8.   Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers of the named Defendant.

## JURISDICTION AND VENUE

9.   This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act (CAFA) because the amount in controversy in this matter exceeds $5,000,000.00[1] as to all putative Class members, inclusive of attorneys' fees and costs, and injunctive relief.  *See* 28 U.S.C. § 1332(d).

10.  This Court has diversity jurisdiction under 28 U.S.C. § 1332 because Plaintiff is a resident and citizen of the State of California, and Defendant is a corporation organized and existing under the laws of the State of Georgia.

11.  This Court has personal jurisdiction over Defendant because Defendant conducts business in the County of Orange. Therefore, Defendant has sufficient minimum contacts with this state, and otherwise purposely avails itself of the markets in this state through the promotion, sale, and marketing of its products

[1] On information and belief, Defendant sells its Products in brick and mortar stores and online retailers throughout California.  Based upon the advertised price of Defendant's products and their statewide availability, Plaintiff is informed, believes, and thereon alleges the class damages exceed the $5,000,000 threshold as set by 28 U.S.C. § 1332(d).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

in this state, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

12. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Defendant designed and manufactured its misleading labels and products within this district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) many of the acts and transactions giving rise to this action occurred in this district because:

    (a)   Defendant is authorized to conduct business in this district;

    (b)   Defendant does substantial business within this district;

    (c)   Defendant is subject to personal jurisdiction in this district because it has availed itself of the laws and markets within this district; and,

    (d)   Defendant's actions resulting in harm to at least one of the Plaintiffs occurred within this district.

## PARTIES

13. Plaintiff Rosas is a natural person residing in the City of Inglewood, County of Los Angeles, State of California.

14. Plaintiff Milan is a natural person residing in the City of Santa Ana, County of Orange, State of California.

15. Plaintiff Ayoob is a natural person residing in the City of San Francisco, County of San Francisco, State of California.

16. Upon information and belief, Defendant is a corporation that is organized and exists under the laws of the State of Georgia, with its principal place of business in Norcross, Georgia.

17. Defendant manufactures and/or distributes various products, including purportedly consumable consumer packaged goods and purportedly dietary supplements. Defendant conducts extensive business through Internet sales and

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

enjoys wide retail distribution at numerous stores within the United States, including California.

## NATURE OF THE CASE

18. At all times relevant, Defendant made and continues to make affirmative misrepresentations regarding its products, which it manufactures, markets, and sells in physical stores and online through its own website and other online retailers, including Amazon.com among others.

19. Defendant advertised, marketed, packaged, and sold its products to Plaintiffs and other consumers similarly situated in California with the false representation that its products containing DMAA, DMHA, and Methylsynephrine were suitable for human consumption and that its products were dietary supplements.

20. 1,3-dimethylamylamine ("DMAA") and Dimethylhexylamine ("DMHA") were originally developed to be used in nasal decongestant. However, in recent years, it has been discovered that consuming these ingredients acts as a central nervous stimulant that increases the uptake of dopamine and noradrenaline.

21. Similarly, Methylsynephrine is a stimulant used in preworkout supplements that increases blood pressure and affects heart rate. This ingredient can cause nausea, vomiting, agitation, increased heart rate, chest pain, and cardiac arrest.

22. Defendant has many products that it advertises, markets, and sells that contain the ingredients DMAA, DMHA and Methylsynephrine, the FDA has determined that these ingredients do not meet the standard to qualify as a consumable ingredient nor be labeled as a dietary supplement.[2]

---

[2] DMAA in Products Marketed as Dietary Supplements, Food and Drug Administration (August 2018), https://www.fda.gov/food/dietary-supplement-products-ingredients/dmaa-products-marketed-dietary-supplements; *DMHA in Dietary Supplements*, U.S. FOOD AND DRUG ADMINISTRATION, HTTPS://WWW.FDA.GOV/FOOD/DIETARY-SUPPLEMENT-PRODUCTS-INGREDIENTS/DMHA-DIETARY-SUPPLEMENTS (last accessed Feb. 5, 2019); *Methylsynephrine in Dietary Supplements*, U.S. FOOD AND DRUG ADMINISTRATION, https://www.fda.gov/food/dietary-supplement-products-ingredients/methylsynephrine-dietary-supplements.

23. The FDA considers DMAA an unsafe food additive as this substance has been known to narrow blood vessels and arteries, which can raise blood pressure. It may also lead to cardiovascular problems such as shortness of breath, arrhythmias, tightening in the chest, and heart attack, as well as seizures and other neurological and psychological conditions.

24. Similarly, the FDA considers DMHA an unsafe food additive if it is placed in purported dietary supplements.

25. Since 2012, the FDA has made tremendous efforts to prevent the sale of products containing these ingredients on the open market, including sending warning letters to several companies informing them of their violations and demanding that they cease manufacturing the products immediately.

26. The misrepresentations that Defendant made regarding the ingredients in its products caused each of the Plaintiffs and similarly situated California consumers to purchase and ingest substances that the FDA considers non-consumable. Moreover, these false claims about their products allow HTP to gain a market share of the industry that they're in through misleading practices which is an unfair advantage to its competitors.

27. In short, the FDA has banned the inclusion of the ingredients DMAA and DHMA in dietary supplements. Despite this, Defendant continues to include these ingredients in products that it sells on the open market.

28. Defendant's conduct as alleged herein violates several California laws, as more fully set forth herein.

### FACTUAL ALLEGATIONS

29. Plaintiffs re-allege and incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

### Plaintiff Rosas

30. On or about May 31, 2017, Plaintiff Rosas purchased Defendant's "Mesomorph Pre-Workout" for $37.40 from samedaysupplements.com. One of the

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

ingredients included is Methylsynephrine.

31. On or about April 4, 2017 Plaintiff Rosas purchased "DMAA Enhanced—Off the Chain Aminos" from legendarysupplements.com. This product contains DMAA, which is portrayed on the label as methylhexanamine HCL.

32. On this same day, Plaintiff purchased "HydroxyElite" for about $34.95. HydroxyElite contains DMHA, which is portrayed on the label as 2-Aminoisoheptane HCL.

**Plaintiff Ayoob**

33. On or about March 7, 2019, Plaintiff Ayoob purchased Defendant's "Lipodrene: With 25mg Ephedara Extract" for $30.39 through eBay. Lipodrene contains DMHA in the form of 2-Aminoisoheptane HCl, as shown on its label.

**Plaintiff Milan**

34. On or about May 16, 2017, Plaintiff Milan purchased Defendant's product "Lipodrene Elite" for $42.20 from iconsupplements.com. Lipodrene contains DMHA in the form of 2-Aminoisoheptane HCl, as shown on its label, and 1,3 DMAA.

35. Defendant manufactures, markets, and sells the Products online through its own website and other retailers, which it advertises on the Product's label and related advertising materials as being a dietary supplement and suitable for human consumption.

36. At the time Plaintiffs purchased Defendant's Products, Plaintiffs believed and relied upon the representations made on Defendant's Products' labels and packaging that the Products were "Supplements" that were to be orally consumed daily. Plaintiffs reasonably believed that the Products were safe to ingest and were beneficial to their health.

37. On information and belief, Defendant's Product's label, packaging, and advertising materials are prepared and/or approved by Defendant and/or its agents.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

38. As mentioned in detail above, Defendant's Products all contain unsafe food additives that can cause serious cardiovascular and neurological problems.

39. Consequently, Defendant's Products are neither "Supplements" nor are they safe for human consumption more generally.

40. Defendant knew, or in the exercise of reasonable care, should have known that its Product's label and advertising materials were misleading or false.

41. As a consequence of Defendant's unfair and deceptive advertising and manufacturing practices, Plaintiffs and other consumers similarly situated purchased and overpaid for Defendant's Product under the false impression that the Product was a dietary supplement capable of enhancing physical performance.

42. Plaintiffs and other consumers similarly situated in California purchased and overpaid for Defendant's Product under the false impression that the Product would provide the health benefits associated with the use of the product; however, the Product could not provide these advertised benefits as it was an unsafe food additive.

43. If Plaintiffs had been aware that the Product contained an unsafe food additive putting their health at risk, Plaintiff would have purchased a different product. In other words, Plaintiff would not have purchased Defendant's Product but for the representations on the Product's label and related advertising.

44. Plaintiffs and others similarly situated were exposed to and relied upon the same material misrepresentations made on Defendant's Products' labels and website, where Defendant sold, and currently sells, its Product to consumers throughout the State of California.

45. As a result of Defendant's false and misleading statements and failure to disclose, Plaintiffs and others similarly situated consumers purchased thousands, if not tens or hundreds of thousands, of units of Defendant's

Products, and have suffered, and continue to suffer, injury in fact through the loss of money and/or property.

46. Included within the demands of this Complaint are any products manufactured by Defendant, or its "Family of Brands"3, which contain DMHA, DMAA, or Methylsynephrine.

47. This action seeks, among other things, equitable and injunctive relief, restitution of all amounts illegally obtained, and disgorgement of any and all ill-gotten gains as a result of the misconduct alleged herein.

## CLASS ACTION ALLEGATIONS

48. Plaintiffs re-allege and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

49. Plaintiffs bring this action collectively and on behalf of all others similarly situated against Defendant, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2).

50. Subject to additional information obtained through further investigation and/or discovery, the proposed class (the "Class") consists of:

> All persons within the United States who purchased a product, from Defendant, irrespective of brand name, containing the ingredients DMAA, DMHA, and/or Methylsynephrine within the four years prior to the filing of this Complaint.

51. Excluded from the Class is Defendant and any of its officers, directors, and employees, or anyone who purchased Defendant's Product for the purpose of resale. Plaintiff reserves the right to modify or amend the Class definition before the Court determines whether certification is appropriate.

52. The "Class Period" means four years prior to the filing of the Complaint in this action.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

3 This includes APS Nutrition, Blackstone Labs, IForce Nutrition, ALRI Industries, Formutech Nutrition, Innovative Labs, LG Sciences, Prim Nutrition, Sports One, Top Secret Nutrition, Genone, and Nature's Essentials.

53. **Ascertainability**. The members of the Class are readily ascertainable from Defendant's records and/or Defendant's agent's records of retail and online sales, as well as through public notice.

54. **Numerosity**.  The members of the Class are so numerous that their individual joinder is impracticable. Plaintiffs are informed and believe that the Products are sold in large chain retainers including GNC, Rite Aid, Kroger, Albertson's, CVS throughout the country, as well as numerous other 3rd party retailer sites, with product with hundreds of customer reviews, and on that basis, Plaintiff alleges that the putative Class consists of hundreds, if not thousands of members.

55. **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. All members of the Class have been subject to the same conduct and their claims are based on the same standardized marketing, advertisements and promotions. The common legal and factual questions include, but are not limited to, the following:

    a.    Whether the Products as manufactured contained DMAA, DMHA, or Methylsynephrine or any of its other known aliases;

    b.    Whether the Products were actually advertised as being a "Supplement" that is for human consumption, when in fact they are not a "Supplement";

    c.    Whether the Products were safe for human consumption given their ingredients;

    d.    Whether Defendant's claims and representations, as alleged herein, are untrue, misleading, and/or reasonably likely to deceive the average consumer;

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

e. Whether Defendant's conduct violates California Civil Code §§ 1750, *et seq.*;

f. Whether Defendant's advertising is false, untrue, or misleading within the meaning of California Business & Professions Code §§ 17500, *et seq.*;

g. Whether Defendant's conduct is an unfair, fraudulent, or unlawful act or practice within the meaning of California Business & Professions Code §§ 17200, *et seq.*;

h. Whether Defendant's advertising is unfair, deceptive, untrue or misleading within the meaning of California Business & Professions Code §§ 17200, *et seq.*;

i. Whether Defendant acted negligently or intentionally in making the misrepresentations contained on the Product's label and Defendant's website;

j. Whether Defendant, through its conduct, received money that, in equity and good conscience, belongs to the Plaintiffs and members of the Class;

k. Whether the Plaintiffs and the putative Class members are entitled to equitable relief, including but not limited to restitution and/or disgorgement of ill-gotten gains; and

l. Whether the Plaintiffs and the putative Class members are entitled to injunctive relief as sought herein.

56. **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Class in that the Plaintiffs are members of the Class that the Plaintiffs seek to represent. Similar to members of the putative Class, Plaintiffs purchased Products from Defendant after exposure to the same material misrepresentations appearing on the Products' labels. Plaintiffs also received a Product that is not a dietary supplement and contained dangerous food additives (DMAA or

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

DMHA). Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent members of the Class. Defendant has no defenses unique to the Plaintiffs.

57. **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of the members of the putative Class. Plaintiffs have retained counsel experienced in consumer protection law, including class actions, and specifically, false and deceptive advertising. Plaintiffs have no adverse or antagonistic interest to those in the Class and will fairly and adequately protect the interests of the Class. Plaintiffs' attorneys are aware of no interests adverse or antagonistic to those of Plaintiffs and proposed Class.

58. **Superiority**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individualized litigation would create the danger of inconsistent and/or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system. The damages or other financial detriment suffered by individual Class members may be relatively small compared to the burden and expense that would be entailed by individual litigation of the claims against the Defendant. The injury suffered by each individual member of the proposed class is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the proposed Class to individually redress effectively the wrongs to them. Even if the members of the proposed Class could afford such litigation, the court system could not. Individualized litigation of the complex legal and factual issues of such a case increases the delay and expense to all parties, including the court. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Therefore,

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

a class action is maintainable pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2).

59. Unless the Class is certified, Defendant will retain monies received as a result of Defendant's unlawful and deceptive conduct alleged herein. Unless a class-wide injunction is issued, Defendant will also likely continue to, or allow its resellers to, advertise, market, promote, and sell the Class Product in an unlawful and misleading manner, and members of the Class will continue to be misled, harmed, and denied their rights under California law.

60. Further, Defendant has acted or refused to act on grounds that are generally applicable to the class so that declaratory and injunctive relief is appropriate to the Class as a whole, making class certification appropriate pursuant to Fed. R. Civ. P. 23(b)(2).

### FIRST CAUSE OF ACTION FOR
### VIOLATIONS OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
### CAL. CIV. CODE §§ 1750, *ET SEQ.*

61. Plaintiffs re-allege and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

62. California Civil Code Section 1750, *et seq.*, entitled the Consumers Legal Remedies Act (hereinafter "CLRA"), provides a list of "unfair or deceptive" practices in a "transaction" relating to the sale of "goods" or "services" to a "consumer."  The Legislature's intent in promulgating the CLRA is expressed in Civil Code Section 1760, which provides, *inter alia*, that its terms are to be:

> Construed liberally and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.

63. Defendant's Product constitutes a "good" as defined pursuant to Civil Code Section 1761(a).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

64. Plaintiffs and the putative Class members are each a "consumer" as defined pursuant to Civil Code Section 1761(d).

65. Plaintiffs and each of the putative Class members' purchase of Defendant's Product constitutes a "transaction" as defined pursuant to Civil Code Section 1761(e).

66. Civil Code Section 1770(a)(2), (5), (7) and (9) provide that:

> The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:
>
> (2) [m]isrepresenting the source, sponsorship, approval, or certification of goods or services;
>
> (5) [r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . .;
>
> (7) [r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another; [and]
>
> (9) [a]dvertising goods or services with intent not to sell them as advertised."

67. Defendant violated Civil Code Section 1770(a)(2), (5), (7) and (9) by marketing and representing its Product was a dietary supplement containing consumable ingredients, when, in fact, the Product contained food additives not making it a dietary supplement or consumable.

68. Defendant's Product contains DMAA, DMHA and/or Methylsynephrine, which make it not suitable for human consumption and a risk to consumers' health.

69. On information and belief, Defendant's violations of the CLRA, as set forth herein, were done with awareness of the fact that the conduct alleged was wrongful and was motivated solely by Defendant's self-interest, monetary gain, and increased profit. Plaintiffs further allege that Defendant committed these

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

acts knowing the harm that would result to Plaintiffs and Defendant engaged in such unfair and deceptive conduct notwithstanding such knowledge.

70. Plaintiffs suffered an "injury in fact" because Plaintiffs' money was taken by Defendant as a result of Defendant's false representations set forth on Defendant's actual Product label.

71. As a direct and proximate result of Defendant's violations of the CLRA, Plaintiffs and members of the putative Class are entitled to a declaration that Defendant violated the Consumer Legal Remedies Act.

72. As of the filing of this Complaint, Defendant has not complied with Plaintiffs' demand letters pursuant to California Civil Code § 1782, which was served on Defendant on or about September 24, 2019 and November 21, 2019, by certified U.S. mail.

73. Attached hereto as Exhibit A is the affidavit of Plaintiff Milan pursuant to Cal. Civ. Code § 1780(d).

74. Plaintiffs and the putative Class are also entitled to, and seek, injunctive relief prohibiting such conduct in the future and to recover money damages.

## SECOND CAUSE OF ACTION FOR
## VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL")
## BUS. & PROF. CODE §§ 17500, *ET SEQ.*

75. Plaintiffs re-allege and incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

76. Plaintiffs and Defendant are both "person[s]" as defined by California Business & Professions Code § 17506.

77. California Business & Professions Code § 17535 authorizes a private right of action on both an individual and representative basis.

78. Defendant states that its Products are dietary supplements containing consumable ingredients, when, in fact, the Product contained food additives making it not a dietary supplement or consumable.

79. These misrepresentations, acts, and non-disclosures by Defendant constitute false and misleading advertising in violation of Business & Professions Code §§ 17500, *et seq*.

80. At all times relevant, Defendant's advertising and promotion of its Products were, and are, untrue, misleading, and likely to deceive the reasonable consumer and the public. In fact, Defendant did deceive Plaintiffs and the putative Class members by representing that its Products were dietary supplements containing consumable ingredients designed to support their health and well-being. When, in reality, Defendant knew that its Product contained DMAA, DMHA and/or Methylsynephrine, which the FDA warned them about.

81. Defendant engaged in the false and/or misleading advertising and marketing of its Products, as alleged herein, with the intent to directly or indirectly induce consumers to purchase its Products, which Defendant knew, or had reason to know, was not suitable for human consumption and could not be considered a dietary supplement.

82. Because Defendant knew or should have known that the representations and/or omissions alleged herein were untrue or misleading, Defendant acted in violation of California Business & Professions Code §§ 17500, *et seq*.

83. Had Defendant truthfully advertised that its Product that its Products contained ingredients not safe for human consumption, Plaintiffs and the putative Class members would not have purchased the Products or would have purchased a different product from another manufacturer.

84. This false and misleading advertising of the Products by Defendant presents a continuing threat to consumers, as such conduct is ongoing to this day.

85. As a direct and proximate result of the aforementioned acts and omissions by Defendant, Defendant received and continues to hold monies rightfully belonging to Plaintiffs and the putative Class members, who were led to purchase Defendant's Product during the Class Period.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

### THIRD CAUSE OF ACTION FOR
### VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")
### BUS. & PROF. CODE §§ 17200, *ET SEQ.*

86. Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

87. Plaintiff and Defendant are each a "person" as defined by California Business & Professions Code § 17201. California Business & Professions Code § 17204 authorizes a private right of action on both an individual and representative basis.

88. "Unfair competition" is defined by Business and Professions Code § 17200 as encompassing several types of business "wrongs," including: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising." The definitions in § 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

89. By and through Defendant's conduct alleged in further detail above and herein, Defendant engaged in conduct which constitutes unlawful, unfair, and/or fraudulent business practices, and unfair, deceptive, untrue or misleading advertising, as prohibited by California's UCL.

### A. "UNLAWFUL" PRONG

90. Beginning at a date currently unknown and continuing to the time of the filing of this Complaint, Defendant has committed acts of unfair competition, including those described above, by engaging in a pattern of "unlawful" business practices, within the meaning of Bus. & Prof. Code §§ 17200 *et seq.*, by marketing, manufacturing, and distributing Defendant's Product in violation of California's Consumers Legal Remedies Act, Civil Code § 1759, *et seq.* and

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

California's False Advertising Law, Business & Professions Code §§ 17500, *et seq.*, as well as other Federal regulations.

91. Defendant further violated California's Health & Safety Code § 110660, which states that "any food is misbranded if its labeling is false or misleading in any particular." Section 110660 is a part of California's Sherman Food, Drug and Cosmetic law, California Health & Safety Code § 109875 (the "Sherman law").

92. Claims under state law based on the deceptive labeling of a food product is expressly permitted when the statute to be enforced imposes legal obligations identical to that of the Federal Food, Drug, and Cosmetic Act ("FDCA"), including FDA regulations concerning naming and labeling food products. *See e.g., In re Farm Raised Salmon Cases*, 22 Cal. 4th 1077, 1094-95 (2008). Plaintiff's claim that Defendant violated the FAL by labeling its Product in a false or misleading way imposes legal obligations identical to 21 U.S.C. § 343(a) of the FDCA, which states that, "a food shall be deemed to be misbranded . . . [i]f (1) its labeling is false or misleading in any particular[.]" Further, section 343(a) of the FDCA is not subject to the express preemption provision set forth in 21 U.S.C. § 343-1 of the FDCA.

93. Defendant violated the above-referenced statutes by falsely representing that its Product was a dietary supplement containing consumable ingredients, when in fact the product contained ingredients that unsafe food additives, making the Products not fit for human consumption.

94. By advertising, promoting, manufacturing, and selling its Product in violation of those California laws, Defendant engaged in a pattern of "unlawful" business practices within the meaning of California's UCL.

### B. "UNFAIR" PRONG

95. Beginning at a date currently unknown and continuing to the time of the filing of this Complaint, Defendant has committed acts of unfair competition as prohibited by Bus. & Prof. Code §§ 17200, *et seq.*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

96. Had Plaintiffs and the putative class members been informed that Defendant's Product did not in fact contain ingredients suitable for human consumption, they would not have purchased the Products or would have purchased a different product. In other words, Defendant earned the business of Plaintiffs and the putative Class members by using deceptive advertising, which placed competitors at a disadvantage. Furthermore, Plaintiffs and the putative Class members were harmed in that they paid a price premium for the Products.

## C. "FRAUDULENT" PRONG

97. Beginning at a date currently unknown and continuing to the time of the filing of this Complaint, Defendant engaged in acts of unfair competition, including those described above and herein, in violation of Bus. & Prof. Code §§ 17200, *et seq.*, by engaging in a pattern of "fraudulent" business practices within the meaning of Bus. & Prof. Code §§ 17200, *et seq.*, by falsely advertising its Products as containing, ingredients suitable for human consumption, when, in fact, the Products do not contain such ingredients, but instead unsafe food additives making the Products not "dietary supplements" fit for human consumption.

98. Plaintiffs reserve the right to allege further conduct that constitutes other fraudulent business acts or practices. Such conduct is ongoing and continues to this date.

## D. "UNFAIR, DECEPTIVE, UNTRUE OR MISLEADING ADVERTISING" PRONG

99. Defendant's advertising is unfair, deceptive, untrue, and/or misleading within the meaning of Bus. & Prof. Code §§ 17200, *et seq.*, in that consumers are led to believe that Defendant's Products contain ingredients suitable for human consumption, when, in fact, the Products do not contain such ingredients, and instead the Products have unsafe food additives that render the Products unmarketable as a dietary supplement, as alleged herein.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

100. Plaintiffs and other such reasonable consumers are likely to be, and were, deceived and misled by Defendant's advertising of its Products, as containing ingredients safe to consume consistent with a dietary supplement.

101. As a direct and proximate result of Defendant's unlawful, unfair, and fraudulent conduct described herein, Defendant received and continues to receive an unfair competitive advantage and unearned commercial benefits at the expense of its competitors and the public, who unwittingly provided money to Defendant based on Defendant's misleading representations.

102. Plaintiffs and the putative Class members suffered an injury in fact because Plaintiffs' money was taken by Defendant as a result of Defendant's false representations as set forth on the Products' label and Amazon.com and other 3rd party retailers as mentioned herein.

103. Such acts and omissions by Defendant are unlawful and/or unfair and/or fraudulent, and constitute multiple violations of California's UCL. Plaintiffs reserve the right to identify additional violations by Defendant as may be established through discovery.

104. In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiffs seek the recovery of attorneys' fees, which reward is available to a prevailing plaintiff in a class action such as this.

### FOURTH CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION

105. Plaintiffs repeat, re-allege, and incorporate by reference the above allegations as if fully stated herein.

106. Beginning at a date currently unknown and continuing to the time of the filing of this Complaint, Defendant represented to Plaintiffs and others similarly situated, through product packaging and advertising materials, that Defendant's Products contained ingredients suitable for human consumption and the Products were dietary supplement.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

107. Defendant made these representations knowing, or having reason to know, that its Products contained ingredients that the FDA had publicly and specifically identified as not suitable for human consumption and should not be included in products labeled as "dietary supplements".

108. Defendant acted with the intent to induce the public, including Plaintiffs and putative Class members, to purchase Defendant's Products.

109. Plaintiffs and the putative Class members saw, believed, and relied upon Defendant's representations in making the decision to purchase Defendant's Product.

110. At all times relevant, Defendant knew or should have known that such representations were untrue, and Defendant had no reasonable basis for believing the representations to be true.

111. As a proximate result of Defendant's negligent misrepresentations, Plaintiffs and other consumers similarly situated were induced to purchase, purchase more of, or pay more for Defendant's Products due to the unlawful acts of Defendant, in an amount to be determined at trial, during the Class Period.

### FIFTH CAUSE OF ACTION
### INTENTIONAL MISREPRESENTATION

112. Plaintiffs repeat, re-allege, and incorporate herein by reference the above allegations as if fully stated herein.

113. Beginning at a date currently unknown and continuing to the time of the filing of this Complaint, Defendant intentionally represented to Plaintiffs and others similarly situated, through Products' packaging and advertising materials, that Defendant's Products contained ingredients suitable for human consumption and that its Products were a dietary supplement.

114. Defendant acted intentionally by willfully and purposefully printing a specific "Supplement Facts" label of Defendant's Products indicating to consumers that the Products was a in fact a dietary supplement.

115. Because the Product contains DMAA, DMHA, and/or Methylsynephrine it could not be a dietary supplement and was declared by the FDA to be an unsafe food additive. Therefore, the Product does not have the benefits that Defendant advertises.

116. Defendant knew or had reason to know such representations were false, and continued to label its Products in a false or misleading way.

117. Defendant further knew that retailers were advertising its Products as containing ingredients suitable for consumption, because Defendant designed, manufactured, and affixed the product labeling to its Products before supplying the Products to the retailers.

118. Plaintiffs and the putative Class members saw, believed, and relied upon Defendant's representations in making the decision to purchase Defendant's Product.

119. As a proximate result of Defendant's intentional misrepresentations, Plaintiffs and the putative Class members were damaged in an amount to be determined at trial.

120. Plaintiffs allege the "who, what, when, where, and how" of the alleged deception by Defendant as follows:

    i.    The "who" is Defendant;

    ii.    The "what" is the representation that Defendant's Products, and substantially similar products, had ingredients that were suitable for human consumption and were dietary supplements;

    iii.    The "when" is the date Plaintiffs purchased the Product, and the Class Period of four years prior to the filing of this Complaint;

    iv.    The "where" is in Defendant's product labeling, advertisements, and online marketing; and

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

v.     The "how" is the allegation that Defendant did not disclose that its Products contains unsafe food additives, and thus is not suitable for human consumption nor is it a dietary supplement.

121. By engaging in the acts described above, Defendant is guilty of malice, oppression, and fraud, and Plaintiffs and the putative Class are therefore entitled to recover exemplary or punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request the Court grant Plaintiffs and the putative Class members the following relief against Defendant:

- that this action be certified as a Class Action;
- that Plaintiffs be appointed as the Class Representatives;
- that Plaintiffs' attorneys be appointed as Class Counsel;
- that Defendant's wrongful conduct be adjudged and decreed to violate the consumer protection statutes raised herein;
- An order requiring imposition of a constructive trust and and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiffs and all members of the Class and to restore to the Plaintiffs and members of the class all funds acquired by means of any act or practice declared by this court to be an unlawful, fraudulent or unfair business act or practice, in violation of laws, statutes or regulations, or constituting unfair competition;
- Distribution of any monies recovered on behalf of members of the Class via fluid recovery or *cy pres* recovery were necessary and as applicable, to prevent Defendant from retaining the benefits of their wrongful conduct;
- that Plaintiffs and each of the other members of the Class recover the amounts by which Defendant has been unjustly enriched;
- A temporary, preliminary and/or permanent order for injunctive relief requiring Defendant to: (i) discontinue its false and/or misleading

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

statement/s; and (ii) undertake an immediate public information campaign to inform members of the proposed class as to their prior practices;

- that Defendant be enjoined from continuing the wrongful conduct alleged herein and be required to comply with all applicable laws;

- Pre-judgment interests from the date of filing of this suit;

- that Plaintiffs and each member of the putative Class recover their costs of suit.

## FIRST CAUSE OF ACTION FOR
## VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT
## CAL. BUS. & PROF. CODE §§ 1750, *ET SEQ.*

- Actual damages, injunctive relief, restitution, and punitive damages pursuant to Cal. Civ. Code § 1780(a); and

- an award of costs and attorney's fees pursuant to Cal. Civ. Code § 1780(d).

## SECOND CAUSE OF ACTION FOR
## VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW
## CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*

- Restitution and injunctive relief pursuant to Bus. & Prof. Code § 17203;

- recovery of reasonably attorney's fees pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5.

## THIRD CAUSE OF ACTION FOR
## VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW
## CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*

- Restitution and injunctive relief pursuant to Bus. & Prof. Code § 17535; and

- recovery of reasonable attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5.

## FOURTH CAUSE OF ACTION FOR
## NEGLIGENT MISREPRESENTATION

- A judgment against Defendant for general and compensatory damages in an amount to be determined at trial; and

## FIFTH CAUSE OF ACTION FOR
## INTENTIONAL MISREPRESENTATION

- A judgment against Defendant for general and compensatory damages in an amount to be determined at trial;

- punitive damages pursuant to Cal. Civ. Code § 3294; and

- that Plaintiff and the members of the Class be granted any other relief the Court may deem just and proper.

## TRIAL BY JURY

122. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to and demands a trial by jury.

Dated: March 2, 2020                          Respectfully submitted,

                                              **KAZEROUNI LAW GROUP, APC**


                                              By:  _s/ Abbas Kazerounian_____
                                                   ABBAS KAZEROUNIAN, ESQ.
                                                   NICHOLAS BARTHEL, ESQ.
                                                   *Attorneys for Plaintiff*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

# EXHIBIT A

## DECLARATION OF RALPH MILAN

**I, RALPH MILAN, declare:**

1. On May 16, 2017, I purchased "Lipodrene Elite" for $42.20 manufactured by Hi-Tech Pharmaceuticals, Inc.

2. At the time of purchase and review of the product, I was in Orange County, where I also reside.

I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on February 7___, 2020.

By:_____

Ralph Milan